IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADRIEN STEINMETZ, | : Civil No.  1:23-CV-2066 |
| | : |
| Plaintiff | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| CAROLYN COLVIN, Acting | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant | : |

## MEMORANDUM OPINION

## I.  Introduction

On December 18, 2019, Adrien Steinmetz filed an application for supplemental security income pursuant to Title XVI of the Social Security Act. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Steinmetz was not disabled from her alleged onset date of disability of December 18, 2019, through September 27, 2022, the date of the ALJ's decision.

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Carolyn Colvin is substituted as the defendant in this suit.

Steinmetz now appeals that decision, arguing the ALJ's decision is not supported by substantial evidence. After a review of the record, we conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case

On December 18, 2019, Steinmetz applied for supplemental security income, citing an array of physical and mental impairments, including bulging discs of the cervical spine, cervical and lumbar radiculopathy, osteoporosis, and anxiety.    (Tr. 13).    According to Steinmetz's medical records, her alleged disabilities arose from a motor vehicle accident on April 19, 2019.  (Tr. 357).  Steinmetz was 54 years old at the time of the alleged onset of disability, had at least a high school education, and had past employment as a certified home health aide and a house painter.  (Tr. 44-47).

On April 29, 2019, more than one week after the accident, Steinmetz presented to the Lehigh Valley Hospital.    (Tr. 311). Physician's Assistant Lisa Wippel noted a CT scan was performed on

2

Steinmetz's spine, with negative results. (*Id.*). Steinmetz also received an x-ray and an examination and was referred for treatment at Complete Injury Care ("CIC"). (Tr. 558). Steinmetz treated at CIC 30 times between May 8 and September 10, 2019. (Tr. 495-558). At her initial evaluation with CIC on May 8, 2019, Dr. Eric Homa noted that Steinmetz had lower back pain that she rated as eight out of ten and which radiated down her upper and lower leg. (*Id.*). Steinmetz reported "major discomfort or difficulty" with sitting, standing, bending, lifting, walking, lying down, sleeping, housework, and personal care / dressing. (Tr. 481).

On May 13, 2019, Steinmetz established care with Geisinger Health System ("GSH") at their Pottsville location. (Tr. 307). Certified registered nurse practitioner ("CRNP") Corrine Joy recorded Steinmetz was experiencing stiffness on the right side of her body but that she felt the treatment by Dr. Homa was sufficient to address it. (*Id.*). Steinmetz also reported she had a past diagnosis of osteoporosis and had failed to continue treatment after an initial consult with a rheumatologist in 2016 but was now interested in resuming treatment. (*Id.*).

3

Steinmetz continued to treat at CIC between May 14 and July 18 of 2019. During that time, her pain levels in four specific areas (cervical pain, thoracic pain, lumbar pain, and headache) slowly but continuously fell. (Tr. 522, 524, 526, 530, 534, 536, 538, 540, 542, 544, 546, 548, 550, 552, 554). On July 22, Steinmetz had an MRI at Schuylkill Medical Imaging which showed a broad-based posterior central disc bulging at C5-C6. (Tr. 493). Steinmetz continued her regular treatments at CIC until September 16, 2019, where her pain levels at her final session were recorded as roughly half of what she reported at her intake in May. (Tr. 495).

On November 14, 2019, Steinmetz was seen at GSH Pottsville by Dr. Christian Shuman, who stated Steinmetz was at a high risk for fracture due to her osteoporosis. (Tr. 303). Steinmetz received a DEXA scan at Pottsville Dexa Imaging on November 25. (Tr. 313). The results showed her lumbar spine had a T-Score of -2.6, and her left femoral neck had a T-Score of -3.0; the results of that examination explain that anything below -2.5 indicates a high fracture risk. (Tr. 335).

4

On July 31, 2020, Steinmetz underwent an internal medicine examination with Dr. Marielle Stone, M.D., related to her disability application. (Tr. 357). Dr. Stone noted that Steinmetz's chief complaint was "constant pain, especially on the right side of her body" and that additional "areas of constant pain include her lower left leg due to osteoporosis and neck and low back pain that worsened following the car accident, but was preexisting." (*Id.*). On examination, Dr. Stone noted that Steinmetz walked with normal gait and was able to walk on heels and toes without difficulty. (*Id.*). Dr. Stone also noted that Steinmetz had tenderness to palpitation "over both scapular spines . . . [the] paraspinal muscles of the cervical and thoracic spine over the right side . . . [and the] lumbar spine[.]" (*Id.*). Dr. Stone found Steinmetz had "bilateral paraspinal tenderness of the lumbar spine" and that "[s]harp touch elicits paresthesia in the C6 dermatome of the right upper extremity. [Steinmetz] has decreased sharp sensation in the L4, L5, and S1 dermatomes of the right lower extremity." (Tr. 360). In addition to the osteoporosis, bulging cervical discs, radiculopathy, chronic low back

5

and right-side pain, Dr. Stone also diagnosed chronic left lower extremity pain. (*Id.*).

Following this examination, Dr. Stone opined that Steinmetz could sit for a maximum of two hours at a time, stand a maximum of one hour at a time, or walk a maximum of twenty minutes at a time. (Tr. 364). She further opined that Steinmetz could sit for a maximum of eight hours, stand for a maximum of five hours, and walk a maximum of two hours of the course of an eight-hour workday. (*Id.*). Dr. Stone stated that Steinmetz did not require help with activities of daily living, and could drive, cook, clean, do laundry, and shop without issue. (Tr. 358). Dr. Stone found Steinmetz capable of providing once-a-week childcare and that she could dress and bathe herself. (*Id.*).

On August 11, 2020, Dr. Glenda Cardillo, M.D., reviewed the record and opined that Steinmetz was capable of performing medium work. (Tr. 68). Specifically, Dr. Cardillo found that Steinmetz was subject to some exertional limitations, opining that she can occasionally lift 50 pounds, can frequently lift 25 pounds, can stand and/or walk for "about 6 hours in an 8-hour workday [,]" and sit for the same. (Tr. 66). Dr. Cardillo cited

6

osteoporosis as evidence supporting those conclusions. (*Id.*). Dr. Cardillo noted that Steinmetz did not submit a description of daily activities, and instead repeated Dr. Stone's findings on that topic. (*Id.*).

Around this time, Steinmetz filled out a function report, in which she stated: "anything involving my legs I can only do a few mins at a time" and that she could walk only "a block or less" without stopping. (Tr. 225). In January of 2021, Steinmetz's daughter submitted a third-party function report, alleging that her mother's "chronic pain lessens her ability to work, stand, or move about," that "all movement causes severe pain," and that her mother's condition affects her ability to stand and sit. (Tr. 238, 240, 243).

On March 31, 2021, Dr. Michael Lombard, M.D., reviewed the record on reconsideration and found that Steinmetz could perform medium work. (Tr. 87). Dr. Lombard's findings were similar to Dr. Cardillo's findings, in that Dr. Lombard found that Steinmetz can occasionally lift 50 pounds, can frequently lift 25 pounds, can stand and/or walk for "about 6 hours in an 8-hour workday [,]" and can sit for the same. (Tr. 83-84). He noted that Steinmetz had a normal gait and

did not need an assistive device to ambulate. (Tr. 85). Dr. Lombard stated that Steinmetz did not submit a description of daily activities but noted Dr. Stone's findings on that matter. (*Id.*).

It is against this factual backdrop that the ALJ conducted a hearing in Steinmetz's case on July 1, 2022. (Tr. 33-60). Steinmetz and a vocational expert ("VE") both testified at this hearing. (*Id.*). Following this hearing, the ALJ issued a decision denying Steinmetz's application for benefits. (Tr. 10-21). In that decision, the ALJ first concluded that, since Steinmetz's alleged onset of disability, she had not had any work that rose to the level of substantial gainful activity. (Tr. 12-13). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Steinmetz suffered from the following severe impairments: bulging discs of the cervical spine; cervical and lumbar radiculopathy; and osteoporosis. (Tr. 13). The ALJ further concluded that while Steinmetz suffered from other impairments such as nasal bone fracture, rib deformity, and anxiety, these impairments were non-severe. (*Id.*). At Step 3 the ALJ determined that these impairments did not meet or equal

the severity of a listed impairment under the Commissioner's regulations. (Tr. 16).

Between Steps 3 and 4 the ALJ concluded that Steinmetz:

[H]a[d] the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c), except she must avoid concentrated exposure to extreme cold, vibration, and hazards.

(*Id.*).

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Steinmetz's reported symptoms. (Tr. 20-21). With respect to his consideration of medical opinion evidence, the ALJ found the opinions of state agency consulting Drs. Cardillo and Lombard to be:

[P]ersuasive as they are consistent with and supported by the previously discussed evidence of record, including the benign physical examination findings as noted by both medical consultants and the claimant's providers, a lack of anything other than routine treatment for her physical impairments during the relevant time period, and the claimant's reported activities of daily living, including taking care of her personal needs, taking care of her young granddaughter, driving, painting, drawing coloring, doing household chores such as laundry and cleaning, doing the dishes, shopping in stores, managing her finances, and spending time with others both in person and over the telephone.

(Tr. 19).

The ALJ found the opinion of Dr. Stone "somewhat persuasive." (Tr. 19). The ALJ concluded that Dr. Stone's postural or manipulative limitations were not supported by the evidence nor found by the other medical evaluators, and so were not persuasive. (*Id.*). However, the ALJ specifically opined that Dr. Stone's opinion on "exertional level is persuasive[,]" for all the same reasons that he found the opinions of Drs. Cardillo and Lombard to be persuasive, listed above. (*Id.*).

With respect to Steinmetz's symptoms, the ALJ noted that while Steinmetz's "medically determinable impairments could reasonably be expected to cause the alleged symptoms [,]" that her statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence. (Tr. 17). Steinmetz established she was previously employed as a certified home health aide as well as a house painter. (Tr. 46-47). Steinmetz testified that her main health problem was constant pain in both legs, especially the left, and that she also had pain in her back and arms. (Tr. 47). She stated that she gets out of breath a lot, that she needed a break

after "ten minutes" of being on her feet, that her pain is primarily "in the back of my [left] leg [,]" and it was "constant[.]" (Tr. 49, 51, 52). Steinmetz explained that after standing for ten minutes, pain began to set in, and that pain worsened if she "stand[s] for a long time[.]" (Tr. 53).

Regarding these allegations, the ALJ noted that Steinmetz engaged "in a variety of activities," including household chores like cleaning or laundry, caring for her personal needs, preparing simple meals, driving, shopping, managing finances, painting, drawing, coloring, assisting in the care of her four-year-old granddaughter, and socializing both in person and over the phone. (Tr. 18.). The ALJ relied on Steinmetz's assertion that she did not need a cane or walking device and did not need assistance from her roommate except for when moving items around their home. (*Id.*). While acknowledging Steinmetz had some limitations and the above facts are not dispositive, the ALJ found that the facts as a whole "suggest that the claimant can perform work within the above parameters on a sustained and continuous basis." (*Id.*).

Having made these findings, the ALJ found at Step 4 that Steinmetz could not perform her past work. (Tr. 20). However, at Step

5, the ALJ found she could perform other jobs that existed in significant numbers in the national economy, such as a bus cleaner, warehouse worker, or hand packer. (Tr. 21). Having reached these conclusions, the ALJ determined that Steinmetz had not met the showing necessary to sustain her claim for benefits and denied the claim.

This appeal followed. (Doc. 1). On appeal, Steinmetz challenges the adequacy of the ALJ's decision, arguing: (1) the ALJ's function-by-function assessment was inadequate and frustrates judicial review; (2) the ALJ erred by omitting without explanation certain limitations in medical opinions he relied upon; (3) that the ALJ improperly substituted his own medical opinion for those on record resulting in an RFC that exceeds all medically recommended limitations, and; (4) the ALJ erred in not ordering a mental consultative examination in order to fully and fairly develop the record. (Doc. 10 at 5).

As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be remanded for further consideration by the Commissioner in accordance with this decision.

12

III.    **Discussion**

    A.    **Substantial Evidence Review – the Role of this Court**

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No.

14

3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather

15

the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

## B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes [him/her] from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits

16

under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments,

including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting*

*Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion

19

supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

## C.    Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in December of 2019 after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

20

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion

21

without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

## D.    The ALJ's Decision is Not Supported by Substantial Evidence.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).    After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

As discussed above, an ALJ is not mandated to accept any medical opinion and is free to evaluate the evidence on record to reach his or her

own conclusions, including conclusions supported by no medical opinion on record. *Cummings*, 129 F. Supp. 3d at 214–15.  But where an ALJ has found a medical opinion to be persuasive yet does not incorporate all of that opinion's limitations into the RFC, that omission must be explained in the opinion. *Durden*, 191 F. Supp. 3d 455.  An opinion that fails to explain such an omission is not based on substantial evidence. *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981) ("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."); *see also Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) ("[U]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty[.]") (internal quotation marks omitted).

Steinmetz contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to conduct a

function-by-function assessment regarding her ability to stand and walk. Social Security Ruling ("SSR") 96-8p explains that the ALJ's "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" and that the "function-by-function assessment [must be] based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 362207. The ruling explains that the "RFC may be expressed in terms of an exertional category, such as light . . . [h]owever, without the initial function-by-function assessment . . . it may not be possible to determine whether the individual is able" to do either past work or other work available in the national economy. *Id.* The ruling further explains this is because "a failure to first make a function-by-function assessment . . . could result in the adjudicator overlooking some of an individual's limitations or restrictions." *Id.* That ruling also identifies that when discussing "exertional capacity," there are seven areas of strength to be considered— sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id*. Further, the ruling instructs that "[e]ach function must be considered

24

separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours.')" *Id.* Finally, the SSR explains that even if functions would be grouped together in a particular occupation, that does not change the function-by-function requirement of the evaluative process, as "it is not invariably the case that treating the activities together will result in the same decisional outcome as treating them separately." *Id.*

Here, the ALJ determined that Steinmetz was able to undertake "a full range of medium work." (Tr. 20). This is an acceptable expression of the RFC—so long as the initial assessment considered each limitation in isolation. SSR 96-8p. The Commissioner argues this requirement is met here by the ALJ's reliance on the medical opinions of Drs. Cardillo and Lombard, who themselves "considered Plaintiff's ability to stand and walk and found that she could perform medium work." (Doc. 14 at 13). This statement is accurate, but not sufficient to bring the opinion into compliance with SSR 96-8p, which requires each impairment be considered individually. SSR 96-8p. Nowhere in the ALJ's opinion does he discuss standing or walking, except to acknowledge that Steinmetz avers she has problems with both. (Tr. 17).

Dr. Stone, whose opinion the ALJ found somewhat persuasive, opined in the most detail on the issues of standing and walking. Dr. Stone opined that Steinmetz could sit for two hours at a time, stand one hour at a time, walk 20 minutes at a time, and could sit for eight, stand for five, and walk for up to three hours in an eight-hour workday. (Tr. 364). As briefly discussed above, while the ALJ disagreed with Dr. Stone's findings related to postural or manipulative activities, he explicitly found her opinion as to "[t]he exertional level is persuasive as it is consistent with and supported by the previously discussed evidence of record . . . ." (Tr. 18). SSR 96-8p makes clear that standing and walking are part of the exertional level findings. SSR 96-8p. Thus, our reading of the ALJ's decision indicates that the ALJ was persuaded by Dr. Stone's opinion of Steinmetz's standing and walking limitations, and yet did not include the relevant limitations in his RFC nor in his hypotheticals to the VE discussed below. This could have been simple oversight or considered omission—without a function-by-function assessment addressing this limitation, we can only guess why it is absent. This is the sort of

ambiguity that the Third Circuit has warned will require a remand. *Cotter,* 642 F.2d 705.

We find a case in this district instructive on this issue. *See Barbour v. Kijakazi*, 2021 WL 4478332 (M.D. Pa. Sep. 30, 2021) (Arbuckle, M.J.). In *Barbour*, the ALJ assigned "great weight" to a medical opinion which included limitations on the claimant's ability to sit, stand, and walk. *See Barbour*, 2021 WL 4478332, at *4. However, the ALJ failed to conduct a function-by-function assessment of those activities and crafted an RFC wherein the claimant was found to be capable of light work. *See id*. Judge Arbuckle concluded that the ALJ's RFC determination was not supported by substantial evidence and remanded the matter because the ALJ failed to include a function-by-function assessment. *Id.* The same logic applies here. While the ALJ here found Dr. Stone's overall opinion "somewhat" persuasive, he found it to be "persuasive" regarding the sitting, standing, and walking limitations. (Tr. 18). This error is compounded by the fact that the ALJ limited Steinmetz to medium work, which requires even more of an ability than the limitation to light work assessed to be inadequate in *Barbour*.

27

The ALJ needed to either account for that limitation or explain the reason he rejected it. *See Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (remanding where the ALJ "failed to mention or refute some of the contradictory medical evidence before him . . . failure to mention and explain this contradictory evidence was error."); *see also Mattox v. Kijakazi*, 2023 WL 5943135, at *7 (M.D. Pa. Sep. 12, 2023) ("Despite finding that the consultants' opinions were persuasive, the ALJ did not include any standing/walking limitations . . . [while] the ALJ was not bound . . . to adopt all the limitations, he was required to explain his basis for [not] doing so."); *Simon v. Kijakazi*, 2022 WL 828935, at *9 (M.D. Pa. Mar. 18, 2022) (remanding because a "limitation contained within . . . an opinion deemed persuasive by the ALJ, was not addressed or incorporated into the RFC in any meaningful fashion."); *Evantis v. Berryhill¸* 2018 WL 1465276, at *11 (M.D. Pa. Feb. 28, 2018) ("[T]he ALJ was by no means bound by Dr. Feinstein's opinion on [claimant's] limitations, and was not required to adopt all of the limitations, [but] she was required to explain her basis for doing so."); *Hines v. Colvin*, 2015 WL 8489970, at *13 (M.D. Pa. Dec. 9, 2015) ("[T]he

28

ALJ did not provide an explanation as to why these limitations, which were contained within opinions the ALJ gave great weight to and held were supported by and consistent with the record, were not included in the RFC . . . substantial evidence does not support the ALJ's RFC determination due to the exclusion of these limitations.").

The omission frustrates the task of judicial review. On this record, we cannot say if substantial evidence supports the ALJ's conclusion that Steinmetz has the residual functional capacity for medium work. *Burnett*, 220 F.3d 123 ("Because the ALJ erred in not evaluating all of the medical evidence, this Court cannot now assess whether the ALJ's determination that [claimant] has the residual functional capacity to perform 'light' work was supported by substantial evidence[.]"). Accordingly, a remand is required for further consideration of this issue.

Because we hold that a remand is necessary, we do not reach consideration of plaintiff's other alleged errors. While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.

29

IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner will be

REMANDED for further consideration.

An appropriate order follows.

_S/ Daryl F. Bloom_
Daryl F. Bloom
United States Magistrate Judge

30